UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONALD AND CHERI REED,

      Plaintiffs,

v.                                     Case No. 1:11-CV-963

BAC HOME LOANS SERVICING, LP, a        HON. GORDON J. QUIST
California Limited Partnership, FANNIE
MAE, a government-sponsored entity, and
STRATEGIC RECOVERY GROUP, a
Delaware Corporation

      Defendants.

_____/

## OPINION

Plaintiffs, Donald and Cheri Reed, have filed a five-count complaint alleging: fraudulent misrepresentation as to Bank of America, N.A. ("BANA")[1] (Count 1); wrongful foreclosure as to BANA and Federal National Mortgage Association ("FNMA") (Count 2); negligent infliction of emotional distress (Count 3); intentional infliction of emotional distress (Count 4); and violation of Michigan's Regulation of Collection Practices Act ("MCPA"), M.C.L.A. § 445.251 *et seq.* (Count 5). Two of the defendants, BANA and FNMA (collectively "Defendants") have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. #8.) The Reeds have filed a response (Dkt. #14), to which Defendants replied. (Dkt. #17.) In addition, the Reeds have filed a Motion to Remand to State Court (Dkt. #12), to which Defendants have responded. (Dkt. #13.) For the reasons set forth below, the Court will deny the Reeds' Motion to Remand, will deny Defendants' Motion to Dismiss the intentional infliction of emotional distress claim as to BANA (Count 4), but will grant Defendants' Motion to Dismiss in all other regards.

---

[1]BANA is the successor by merger to BAC Home Loans Servicing, LP ("BAC").

## MOTION TO REMAND

The Reeds' Motion to Remand will be denied. The Reeds argue that the $75,000.00 amount in controversy requirement has not been met, and therefore this Court does not have jurisdiction pursuant to 28 U.S.C. § 1332. In Count II, however, the Reeds ask this Court to set aside the sheriff's deed that Defendant Bank of America Home Loan Servicing, LP ("BAC") purchased for $108,225.61. This request alone puts $108,225.61 in controversy and is greater than the $75,000.00 threshold for diversity jurisdiction. Moreover, the parties are completely diverse. In addition, Defendants timely removed this action. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

In 2008, the Reeds obtained a mortgage from Countrywide Home Loans Inc. for their property located at 3983 W. David Highway, Ionia, Michigan 48846. The Countrywide mortgage was assigned to BANA.[2] BANA eventually foreclosed upon the Reeds' property after the Reeds defaulted on their mortgage. The Reeds filed this lawsuit on the day that their redemption period expired.

## STANDARD OF REVIEW[3]

---

[2] On April 16, 2009, Countrywide assigned the mortgage to Countrywide Home Loans Servicing, LP. Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP. Then, BAC merged into BANA. BANA is the party that initiated foreclosure proceedings and thus is the proper party in interest, not BAC.

[3] Contrary to the Reeds' assertion, the motion is not converted to a motion for summary judgment as a result of the documents Defendants submitted in their motion. Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Fed. R. Civ. P. 12(b)(6), courts recognize an exception for documents attached to or referenced in the complaint. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). A court may also consider matters of public record when considering a motion to dismiss under Rule 12(b)(6). *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).
Here, all of Defendants' exhibits are referenced in the complaint and are central to the claims contained therein, or are matters of public record. The Court will also consider the Reeds' documents which meet these requirements. Since Defendants did not treat the motion as a motion for summary judgment, however, the Court will not treat it as such since Defendants did not have the opportunity put forth a full brief with summary judgment evidence.

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Legal conclusions must be supported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

## ANALYSIS

## I.      Fraudulent Misrepresentation as to BANA (Count 1)

The Reeds' fraudulent misrepresentation count fails to allege fraud with the particularity required by Fed. R. Civ. P. 9(b). The Reeds have not identified the speaker, stated when and where the statements were made, or explained why the statements were fraudulent; all of which are requirements to plead fraud. *See Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008). Moreover, the Reeds make no attempt to describe the statements with particularity in their argument to this Court. *See Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In addition, to the extent that the Reeds are seeking to enforce an oral statement by BANA allegedly promising to review their loan modification, Michigan's statute of frauds bars the Reeds' claim. M.C.L.A. § 566.132(2).

Therefore, Count 1 will be dismissed.

## II.     Wrongful Foreclosure as to BANA and FNMA (Count 2)

Defendants argue that the Reeds cannot challenge the foreclosure of their home because the redemption period has expired and filing a lawsuit does not toll the redemption period.[4] Equitable tolling may apply with a "clear showing of fraud, or irregularity."[5] *Schulthies v. Barron*, 16 Mich.

---

[4] This Court agrees with Judge Jonker in *Langley v. Chase Home Fin. LLC*, 2011 WL 1130926, at *2 n.2 (W.D. Mich. Mar. 28, 2011), where he noted that this issue is viewed as a merits decision. Judge Jonker's note also persuades this Court that the Reeds have Article III standing to challenge the foreclosure process.

[5] The cases that Defendants cite all note that there are "recognized exceptions" to the rule that a plaintiff cannot challenge a foreclosure after the redemption period has expired.

3

App. 246, 247-48, 167 N.W.2d 784, 785 (1969). After belaboring this law, the Reeds merely assert they can challenge the foreclosure "because they have alleged fraud and that the Defendants failed to comply with the mandates of the [foreclosure] statute." (Pls.' Br. at 12.) As explained above, the Reeds have not made a clear showing of fraud.

With regard to an irregularity, the Reeds allege that Defendants failed to comply with the "prerequisites of MCL 600.3204" to foreclose by advertisement. (Compl. ¶ 28.) Michigan Compiled Law Section 600.3204 is lengthy and has many subsections. The Court and Defendants are left to guess which prerequisites of the statute BANA allegedly failed to follow. The Reeds make a vague assertion that they were "never considered or even offered a loan modification." (Compl. ¶ 29.) BANA did not have to offer the Reeds a modification, however, unless they qualified for one first. M.C.L.A. § 600.3205c(7). The requisites for a loan modification are set forth in the foreclosure statute. *See* M.C.L.A. § 600.3205c(1). Count 2 fails because the Reeds do not allege facts–facts which they undoubtedly have if they exist[6]–so that this Court can determine if the Reeds qualified for a modification, and thus whether Defendants plausibly violated Michigan's foreclosure statute. The Court cannot ascertain any other facts in the complaint that would amount to a violation of Michigan's foreclosure statute. The Reeds also allege there were "defects of notice, posting, and publishing," (Compl. ¶ 33), but include no factual allegations to determine whether this claim is plausible.

Therefore, Count 2 will be dismissed because the Reeds' legal conclusions are not supported by factual allegations.

## III. Negligent Infliction of Emotional Distress (Count 3)

In Michigan, negligent infliction of emotional distress does not apply beyond the situation

---

[6] A person's income and housing related debt is the information needed to determine if a borrower qualifies for a loan modification. M.C.L.A. § 600.3205c(1)(a).

where the plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result. *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 629, 504 N.W.2d 715, 720 (1993). The Reeds do not allege that they witnessed negligent injury to a third person. Moreover, the Reeds do not respond to Defendants' argument that the Reeds fail to state a claim for negligent infliction of emotional distress. *See Indeck Energy Servs.,* 250 F.3d at 979.

Therefore, Count 3 will be dismissed.

## IV. Intentional Infliction of Emotional Distress (Count 4)

To establish a claim for intentional infliction of emotional distress, the Reeds must allege: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999).[7] The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "[A]ctions taken to foreclose on a mortgage generally do not rise to the level of extreme and outrageous conduct." *Robbins v. Mortg. Elec. Registration Sys. Inc.*, 2009 WL 3757443, at *8 (W.D. Mich. Nov. 9, 2009); *see also Ursery v. Option One Mortg. Corp.*, 2007 WL 2192657, at *16 (Mich. Ct. App. July 31, 2007) ("Here, the essence of Ursery's argument is that Option One breached contracts with him in various ways and foreclosed on his property. This type of activity does not rise to the level of conduct necessary to satisfy the standard [for extreme and outrageous conduct] in Michigan case law."). "It has been said that the case is generally one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Mills*, 212 Mich. App. 73, 91, 536 N.W.2d

---

[7] "Although the Michigan Supreme Court has not recognized IIED claims, this Court has assumed that it will do so." *Ogle v. Hocker*, 279 F. App'x 391, 400 (6th Cir. 2008) (citing *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998)).

824, 834 (1995).

Sometimes, a large or small business may mislead its customers or borrowers regarding

matters such as mortgages, foreclosure of mortgages, modifications of mortgages, and similar issues

– especially in the emergency type situations that banks and mortgage lenders faced as culminating

in and continuing after September 2008. It was not a good time. It is true that some of the

misrepresentations and mistakes, taken individually, might be "petty oppressions." *See Brown v.*

*Bank of New York Mellon*, 2011 WL 6016901 (W.D. Mich. Dec. 2, 2011). On the other hand, the

complaint in the instant case alleges:

> Defendants told them they were approved for a loan modification and even collected a payment, but then later reneged despite having cashed the payment; Defendant misapplied payments to their account and could not account for where the money went; Defendant claimed to have not received sensitive, private financial data sent to them by Plaintiffs on numerous times and had Plaintiffs resend documents over and over again; Defendants told them that they were approved for a loan modification yet sent letters stating that Plaintiffs did not qualify for a loan modification despite the fact that Plaintiffs had been told by a [BANA] employee that they were actually approved for a loan modification in November 2010 but that Defendant [BANA] had really "messed up their file"; and that Defendants sent numerous letters post-sheriff's sale to Plaintiffs telling the Plaintiffs that they could contact Defendants to prevent foreclosure; Defendants sent various debt collection letters to Plaintiffs during redemption and then sent subsequent letters telling Plaintiffs that the debt collection letters were sent in error.

(Pl.'s Br. at 13.)

* * *

> [P]romising Plaintiffs that they were considered for a loan modification when they were not being so considered, promising not to foreclose by advertisement while a determination was being made regarding the Plaintiffs' application for loss mitigation assistance, misleading Plaintiffs about the status of their loan modification application or being negligent in the processing of the Plaintiffs' loss mitigation application, applying payments to suspense accounts in order to keep the account contractually delinquent, failing to apply payments according to the terms of the contract, and or making unauthorized due date changes and balance adjustments.

(Compl. ¶ 51.)

In this Court's judgment, subject to submission of proofs that support and develop these

allegations, these allegations are sufficient to proceed on the claim of intentional infliction of emotional distress. *See Brown v. Bank of New York Mellon*, 2011 WL 206124, at *6 (W.D. Mich. Jan. 21, 2011) (ruling on a motion to dismiss in a factually similar case that the plaintiffs stated an IIED claim), *but see*, *Brown*, 2011 WL 6016901 (W.D. Mich. Dec. 2, 2011) (dismissing the claim on a motion for summary judgment). The allegations regarding repeated holding out and then dashing hope, demanding the same documents again and again, misapplying mortgage payments, misrepresenting that BANA would contact the Reeds to prevent foreclosure, promising not to foreclose, repeatedly requesting the same information from the Reeds, etc., could be found to be extreme and outrageous conduct. After all, a couple's house is usually the family's most prized and valuable possession. One's identity often is tied up in the place where one lives. *See Longoni v. GMAC Mortg., LLC*, 2010 WL 5186091 (D. Nev. Dec. 14, 2010).

BANA's position as the holder of an in-default mortgage puts them in a position of power that could lend itself to outrageous conduct.

> The extreme and outrageous character of a defendant's conduct may arise in a number of situations. It may occur by virtue of an abuse by defendant of a relationship which puts him in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's interests. The landlord-tenant relationship is one such situation.

*Warren v. June's Mobile Home Vill. & Sales, Inc.*, 66 Mich. App. 386, 391, 239 N.W.2d 380, 383 (1976)*; see also Garreston v. City of Madison Heights*, 407 F.3d 789, 799-800 (6th Cir. 2005) ("[I]n Michigan, a special relationship between the parties may lower the level of conduct needed to be actionable." (citing *Ledsinger v. Burmeister*, 114 Mich. App. 12, 19, 318 N.W.2d 558, 562 (1982))). In addition, a merchant-customer relationship may lower the level of conduct needed to be actionable. *Garreston*, 407 F.3d at 800 (citing *Apostle v. Booth Newspapers, Inc.*, 572 F. Supp. 897, 907-08 (W.D. Mich. 1983)). Likewise, a mortgagee-mortgagor relationship is certainly another relationship which may give rise to a lower level of conduct needed to be actionable.

7

The Reeds now must come forth with evidence of their alleged severe emotional distress which no person could be expected to endure.  *See Haverbush v. Powelson*, 217 Mich. App. 228, 235, 551 N.W.2d 206, 209 (1996).

The Reeds plead no facts, however, that could amount to outrageous conduct as to FNMA or Strategic Recovery Group, and therefore Count 4 is dismissed with respect to these defendants.

Count 4 states a claim for intentional infliction of emotional distress against BANA.  FNMA will be dismissed from Count 4.

**V.      Violation of Michigan's Regulation of Collection Practices Act (Count 5)**

The Reeds allege that Defendants made "inaccurate, misleading, untrue, or deceptive statements or claims in a communication to collect a debt" in violation of Mich. Comp. Laws § 445.252(e).  Although "communication to collect a debt" is not defined in the MCPA or case law, the term has been given meaning under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  "[I]nterpretations of the federal statute provide highly persuasive, although not binding, authority."  *Dana v. Am. Youth Found.*, 257 Mich. App. 208, 215, 668 N.W.2d 174, 179 (2003).  The FDCPA's prohibition of "false, deceptive, or misleading representation" only applies "in connection with the collection of any debt."  15 U.S.C. § 1692e.  "[A] letter informing plaintiffs of the current status of their account and demanding no payment was not a communication 'in connection with the collection of any debt' under the FDCPA."  *McCready v. Jacobsen*, 2007 WL 1224616, at *1 (7th Cir. Apr. 25, 2007); *see also Mabbitt v. Midwestern Audit Serv.*, 2008 WL 723507, at *3-4 (E.D. Mich. Mar. 17, 2008).  Factors to consider whether a communication is "in connection with the collection of any debt" include: the absence of demand for payment, the nature of the parties' relationship, and the purpose and context of the communication.  *Grubek v. Litton Loan Servicing, LP*, 614 F.3d 380, 385 (7th Cir. 2010).

Here, none of the communications identified by the Reeds demand any type of payment.  The

purpose of each communication identified is to inquire into the status of the Reeds' application for a loan modification.  All of the communications are in connection with the status of the Reeds' mortgage or loan modification, but none of the communications are in connection with the *collection* of the debt.  Moreover, the Reeds' do not argue otherwise.  *See Indeck Energy Servs.,* 250 F.3d at 979 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

Therefore, Count 5 will be dismissed.

### CONCLUSION

For the reasons set forth above, the Court will deny the Reeds' Motion to Remand.  Also, the Court will grant in part and deny in part Defendants' Motion to Dismiss.  The motion will be granted as to Count 1, Count 2, Count 3, Count 4 as to FNMA and Strategic Recovery Group, and Count 5, which will be dismissed.  The motion will be denied as to Count 4 for intentional infliction of emotional distress as to BANA.

A separate Order will issue.

Dated:  May 4, 2012                                    _____/s/ Gordon J. Quist_____
                                                                          GORDON J. QUIST
                                                                   UNITED STATES DISTRICT JUDGE